1

2

3

4

5

6

7

8                      UNITED STATES DISTRICT COURT

9                    SOUTHERN DISTRICT OF CALIFORNIA

10

11  JOHN JOSEPH GUTTILLA,            )   Civil No. 09cv2259 MMA(RBB)
                                     )
12           Plaintiff,              )   **REPORT AND RECOMMENDATION**
                                     )   **GRANTING PLAINTIFF'S MOTION**
13  v.                               )   **FOR REVERSAL AND/OR REMAND**
                                     )   **[DOC. NO. 10], DENYING**
14  MICHAEL J. ASTRUE                )   **DEFENDANT'S MOTION FOR SUMMARY**
    Commissioner of Social           )   **JUDGMENT [DOC. NO. 11], AND**
15  Security,                        )   **REMANDING THE CASE FOR AN**
                                     )   **AWARD OF BENEFITS**
16           Defendant.              )
                                     )
17  _____ )

18       John Joseph Guttilla applied for disability insurance

19  benefits on April 30, 2007.  (Admin. R. Attach. #5, 112.)  His

20  claim was initially denied, and the denial was upheld by the

21  Social Security Administration after reconsideration.  (Id.

22  Attach. #3, 48-49.)  A hearing was held before Administrative Law

23  Judge Jerry F. Muskrat on April 7, 2009.  (Id. Attach. #2, 18-

24  47.)  He issued a written decision on June 3, 2009, finding

25  Guttilla was not disabled.  (Id. at 6-17.)  The denial of

26  benefits became final when the Appeals Council upheld the

27  decision on August 13, 2009.  (Id. at 1-3.)  Plaintiff seeks

28  judicial review of Social Security Commissioner Michael J.

Astrue's determination that he is not entitled to disability insurance benefits.  (Compl. 1; Mot. Reverse Remand 1.)  On October 13, 2009, Plaintiff filed his Complaint for Judicial Review and Remedy on Administrative Decision Under the Social Security Act [doc. no. 1].  Defendant filed an Answer [doc. no. 3] and filed the Administrative Record [doc. no. 4] on December 14, 2009.

Guttilla filed a Motion for Reversal and/or Remand [doc. no. 10] on March 19, 2010, with a Memorandum in Support of Motion, requesting that this Court reverse Judge Muskrat's decision and order payment of benefits or, alternatively, remand the case to the Social Security Administration for further proceedings. (Mot. Reverse Remand 14.)  On April 16, 2010, Defendant filed an Opposition to Plaintiff's Motion for Summary Judgment and filed essentially the same document as a Cross-Motion for Summary Judgment [doc. nos. 11-12].  Plaintiff did not file a reply.

The Court finds this matter suitable for decision without oral argument pursuant to Civil Local Rule 7.1(d)(1).  S.D. Cal. Civ. L.R. 7.1(d)(1).  For the reasons set forth below, the Court recommends granting Plaintiff's Motion [doc. no. 10] and denying Defendant's Cross-Motion [doc. no. 11].

## I.  BACKGROUND

Plaintiff was born on December 19, 1944; he was sixty-four years old at the time of the ALJ's decision.  (Admin. R. Attach. #2, 16.)  He has more than a high school education and has past relevant work experience as a gaming or cardroom supervisor, a gambling dealer, a slot cashier, a retail cashier, and a door

keeper.  (Id. at 15–16.)  Guttilla last worked on May 1, 2008,
and claimed that as his disability onset date.[1]  (Id. at 11.)

Plaintiff initially claimed to be disabled due to several
impairments, including emphysema, prostate cancer, back injury
and pain, and shortness of breath.  (Id. at 12; id. Attach. #6,
147.)  In October of 2007, he began treatment with Dr. Jeremy
Flagel, a psychiatrist.  (Id. Attach. #7, 340.)  Guttilla
reported mental problems, including depression and panic
disorder.  (Id. at 334–40.)  At his hearing before the ALJ on
April 7, 2009, Plaintiff alleged he was disabled due to mental
impairments.  (Id. Attach. #2, 23–24; id. Attach. #4, 110.)
Plaintiff's counsel withdrew all claims of physical impairments
due to emphysema, prostate cancer, back injury and pain, and
shortness of breath, stating that he did not "believe any of them
[to be] disabling."  (Id. Attach. #2, 23–24.)  Thus, Plaintiff
relied only on the mental impairments of major depression,
anxiety, and panic disorder in attempting to establish his
alleged disability.  (Id. at 23.)

## II. MEDICAL EVIDENCE

### A.  Plaintiff's Treating Psychiatrist

Guttilla first visited his psychiatrist, Dr. Flagel, on
October 18, 2007, complaining of depression.  (Id. Attach. #7,
340.)  Dr. Flagel noted that Plaintiff was experiencing anxiety
and panic attacks, he had trouble concentrating, he had
difficulty sleeping as well as fatigue, and he often felt
lightheaded and lacked ambition.  (Id. at 340.)  The doctor also

---

[1]  Plaintiff originally claimed March 5, 2007, as his
disability onset date but agreed to change it to May 1, 2008, at
his administrative hearing.  (Id. at 25; id. Attach. #5, 112.)

1  noted that Plaintiff was worried about getting back to work and
2  explained that when he was more active, he was in a better mood.
3  (<u>Id.</u>)

4      Dr. Flagel completed a mental status evaluation checklist
5  and indicated that Guttilla's concentration was intact, his
6  behavior was calm, his perception was normal, his judgment was
7  intact, and his attitude was cooperative with good insight and
8  impulse control.  (<u>Id.</u> at 343.)  Guttilla was oriented as to
9  name, place, date, and situation.  (<u>Id.</u>)  The psychiatrist also
10 noted that Plaintiff's mood was depressed and anxious with
11 appropriate affect and fair eye contact.  (<u>Id.</u>)  The doctor
12 diagnosed Plaintiff with major depressive and panic disorders.
13 (<u>Id.</u> at 344.)  Dr. Flagel also gave Guttilla a global assessment
14 of functioning ("GAF") score of fifty.  (<u>Id.</u>)  Plaintiff was
15 prescribed Prozac and Ativan and put on a behavioral activation
16 treatment plan with the goal of reducing depression and anxiety.
17 (<u>Id.</u>)

18     Plaintiff saw Dr. Flagel for a follow-up medication visit on
19 November 8, 2007.  (<u>Id.</u> 339.)  Plaintiff reported feeling "more
20 mellowed out" but still had difficulty sleeping and experienced
21 fatigue and dizziness.  (<u>Id.</u>)  He explained that he wanted to
22 return to work, but his employer, Home Depot, was not
23 accommodating him.  (<u>Id.</u>)  The doctor made no changes to
24 Guttilla's diagnosis or medications and set a follow-up
25 appointment for four-to-five weeks later.  (<u>Id.</u>)

26     The next medication visit occurred on January 10, 2008, when
27 Guttilla was back at work and "doing a bit better."  (<u>Id.</u> at
28 338.)  He explained that he was still upset about his job because

4

1  he had a ninety-day assignment soliciting customers for credit
2  cards, which was better for his back but difficult for him due to
3  drowsiness.  (Id.)  Plaintiff also reported that he "still moped
4  around" and had difficulty sleeping.  (Id.)  He complained that a
5  side effect of the Ativan medication was  slurring, and it was
6  not controlling his panic attacks, which occurred weekly for ten-
7  to-twenty minutes at a time, so Dr. Flagel discontinued it.
8  (Id.)  Prozac was also discontinued, and Plaintiff was prescribed
9  Zoloft instead.  (Id.)

10  Guttilla's alleged disability onset date is May 1, 2008.
11  (Id. Attach. #2, 11.)  As noted previously, he alleged an earlier
12  onset date but amended it because he had worked up to May 1,
13  2008.  (Id.)

14  Dr. Flagel again saw Guttilla for a medication visit on
15  November 26, 2008, and noted that Zoloft had helped his anxiety.
16  (Id. at 337.)  Guttilla still experienced anxiety and explained
17  that he was on a leave of absence from his job due to treatment
18  for prostate cancer.  (Id.)  He was unsure what type of work he
19  could do for Home Depot, and he was "unsure if he'll go back to
20  [his] job."  (Id.)  Plaintiff did not have panic attacks anymore,
21  but experienced increased heart rate on occasion.  (Id.)

22  On January 5, 2009, Plaintiff returned to the doctor for a
23  medication visit and reported that worsening financial problems
24  were increasing his depression.[2]  (Id. at 336.)  Guttilla was
25  still on a leave of absence, but his state disability had run
26  out, and his employer "refused to pay long term disability."
27
28  [2] Although the physician's progress note is dated January
5, 2008, the sequence of treatment indicates the correct date was
January 5, 2009.

1   (Id.)  He had applied for Social Security benefits but did not

2   feel as if he had control over a disability determination.  (Id.)

3   Guttilla explained that if he had no financial problems, he would

4   have no issues.  (Id.)  Plaintiff also reported continuing

5   anxiety and fatigue, back pain interfering with his sleep,

6   insomnia, and feeling more forgetful.  (Id.)  The doctor

7   considered increasing Plaintiff's prescription for Zoloft but set

8   an appointment for a follow-up visit in six weeks.  (Id.)

9       On February 6, 2009, Plaintiff reported that his financial

10  problems continued.  (Id. at 135.)  He had lost his disability

11  benefits and would lose his health insurance in May, although he

12  would be eligible for Medicare in December.  (Id.)  He reported

13  that he was sleeping a bit better, but he still had difficulty on

14  occasion.  (Id.)  He was worried about the follow-up visit for

15  his prostate cancer because he was "afraid nothing [would] help."

16  (Id.)  At this meeting, the doctor increased Plaintiff's

17  prescription for Zoloft to 100 milligrams and told Guttilla to

18  take naps. (Id.)

19      Dr. Flagel next saw Plaintiff for a medication visit on

20  March 16, 2009, and noted that Guttilla had been diagnosed with

21  diabetes.  (Id. at 334.)  Plaintiff reported sleeping better but

22  was sluggish and started having crying spells.  (Id.)  He still

23  experienced periods of anxiety, had no desire to socialize, and

24  wanted to get out of his house more, but he felt helpless and

25  believed that his medication was not working.  (Id.)  Guttilla

26  also explained that when he was busy he "[didn't] feel down," but

27  with more time off work, he "gets more [depressed]."  (Id.)  The

28  doctor continued Plaintiff's prescription for Zoloft.  (Id.)

6

A few weeks later, on March 28, 2009, Dr. Flagel completed a mental residual functional capacity assessment of Guttilla. (Id. at 330-32.)  The psychiatrist indicated that Plaintiff was not significantly limited in the following areas:

> 13.  The ability to ask simple questions or request assistance.
>
> . . . .
>
> 16.  The ability to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness.
>
> . . . .
>
> 18.  The ability to set realistic goals or make plans independently of others.

(Id. at 330-31.)

Dr. Flagel indicated that Plaintiff was moderately limited in the following areas:

> 1.  The ability to remember locations and work-like procedures.
>
> 2.  The ability to understand and remember very short and simple instructions.
>
> 3.  The ability to understand and remember detailed instructions.
>
> . . . .
>
> 7.  The ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances.
>
> 8.  The ability to sustain an ordinary routine without special supervision.
>
> . . . .
>
> 12.  The ability to interact appropriately with the general public.
>
> . . . .
>
> 14.  The ability to accept instructions and respond appropriately to criticism from supervisors.

7

> 15.  The ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes.
>
>       . . . .
>
> 19.  The ability to travel in unfamiliar places or use public transportation [and]
>
> 20.  The ability to set realistic goals or make plans independently of others.

(Id.)

Finally, the doctor noted that Plaintiff was markedly limited (the most severe gradation on the form) in the following areas:

> 4.  The ability to carry out very short and simple instructions.
>
> 5.  The ability to carry out detailed instructions.
>
> 6.  The ability to maintain attention and concentration for extended periods.
>
>       . . . .
>
> 9.  The ability to work in coordination with or proximity to others without being distracted by them.
>
> 10.  The ability to make simple work related decisions.
>
> 11.  The ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods.
>
>       . . . .
>
> 17.  The ability to respond appropriately to changes in the work setting.

(Id.)

### III.   THE ADMINISTRATIVE HEARING

**A.    The Plaintiff's Testimony**

8

1    Guttilla testified at the hearing before Administrative Law
2 Judge Jerry Muskrat on April 7, 2009. (<u>Id.</u> Attach. #2, 18, 25–
3 37.)  Plaintiff stated that he was a high school graduate and had
4 one year of college experience. (<u>Id.</u> at 26.)  He explained that
5 he had attended school to be trained as a poker dealer, and in
6 the last fifteen years, he had worked as a poker dealer, slot
7 machine attendant, poker floor supervisor, cashier, greeter, and
8 credit card solicitor. (<u>Id.</u> at 27–35.)  Plaintiff had not worked
9 since May 1, 2008. (<u>Id.</u> at 36.)  He was not asked about, and did
10 not give any testimony regarding, mental limitations.

11 **B.    <u>The Vocational Expert's Testimony</u>**

12    Mary Jesco testified as a vocational expert. (<u>Id.</u> at 18,
13 38–47.)  The ALJ presented her with a hypothetical residual
14 functional capacity assessment for a person limited to "non-
15 public, simple repetitive tasks with minimal contact with peers
16 and supervisor[s]." (<u>Id.</u> at 39.)  Jesco stated that such a
17 person could not perform any of Plaintiff's past relevant work.
18 (<u>Id.</u>)  She also noted Guttilla had no work skills that would
19 transfer to the hypothetical residual functional capacity
20 assessment. (<u>Id.</u> at 40–41.)

21    The ALJ then added the physical limitation of "medium range
22 of exertional limitation and an environmental limitation
23 requiring him to avoid even concentrated exposure to fumes[]" to
24 the hypothetical. (<u>Id.</u> at 41.)  Jesco responded that the
25 individual could not perform any of Guttilla's past relevant
26 work. (<u>Id.</u>)  The vocational expert also explained that there
27 would be a significant erosion of the person's occupational base.
28 (<u>Id.</u> at 42–43.)  But the person would be able to perform simple

1   and repetitive jobs with a medium exertion level.  (Id. at 43.)

2   She identified three jobs meeting that criteria:  floor waxer,

3   sweeper cleaner, and bander.  (Id. at 43-44.)

4        Before examining Dr. Jesco, Plaintiff's counsel asked the

5   ALJ, "Where in the record [he] drew the non-exertional

6   limitations from, what specific medical exhibit?"  (Id. at 45.)

7   ALJ Muskrat responded, "Mostly from 18F20 through 9 and 5 through

8   8 for the mental, and then the physical limitations, which

9   included non-exertional limitations, were from the DDS analysis."

10  (Id.)  Counsel asked, "You synthesized the treating records at

11  18F and came up with your own . . . limitations regarding the

12  mental which is the non-exertional limitations?"  (Id.)  The ALJ

13  responded, "Yes."  (Id.)

14       Plaintiff's counsel then asked the vocational expert if Dr.

15  Flagel's mental residual functional capacity assessment was

16  applied, would Plaintiff be capable of performing the jobs that

17  she had identified.  (Id. at 45-46.)  Jesco responded that

18  Plaintiff could not perform any full-time work when applying the

19  psychiatrist's functional analysis of the claimant.  (Id. at 46-

20  47.)

21                    **IV.  THE ALJ'S DECISION**

22       After considering the record, ALJ Muskrat made the following

23  relevant findings:

24            3.  The claimant meets the insured status
                 requirements of the Social Security Act through
25               November 30, 2010.

26            . . . .

27            4.  The claimant has not engaged in substantial
                 gainful activity since May 1, 2008, the amended alleged
28               onset date.

1

2          . . . .

3          5.   The claimant has the following severe
impairments: emphysema; status post prostate cancer;
back injury and pain; shortness of breath; major
depressive disorder; single episode; and panic
disorder.

5

6          . . . .

7          From a mental standpoint, the claimant has major
depressive disorder; single episode; and panic
disorder.  His panic disorder has manifested in anxiety
and the tendency to avoid socialization.

8

9          . . . .

10          With reference to the claimant's alleged medically
determinable <u>mental</u> impairments, the court hereby
determines the following impairments are severe: major
depression, single episode; and a panic disorder.

12          The claimant's mental impairments results [sic] in
the claimant experiencing mild restrictions of the
activities of daily living; moderate difficulties in
maintaining social functioning; moderate difficulties
in maintaining concentration, persistence, or pace; but
in no episodes of decompensation.  Furthermore, the
evidence does not establish the presence of the "C"
criteria of the Listing of Impairments in 20 C.F.R.,
Part 404, Subpart P, Appendix 1, Part A.

17          . . . .

18          6.   The claimant does not have an impairment or
combination of impairments that meets or medically
equals one of the listed impairments in 20 C.F.R. Part
404, Subpart P, Appendix 1, Part A.

20

21          . . . .

22          7.   After careful consideration of the entire
record, the [ALJ] finds that the claimant has the
residual functional capacity to perform medium work as
defined in 20 C.F.R. 404.1567(c) except he must avoid
concentrated exposure to fumes, odors, gases, poor
ventilation, etc. and he is mentally limited to: simple
and repetitive tasks with no public contact and minimal
interaction with peers and supervisors.

26          . . . .

27          I have taken into consideration the documentation
in the record that the claimant tends not to socialize
due to his anxiety.

09cv2259 MMA (RBB)

. . . .

While claimant argues that he is unable to sustain even simple and repetitive tasks [sic]. However, the weight of the objective evidence does not support the claims of the claimant's disabling limitations to the degree alleged. Mental status exams show that the claimant was alert and oriented, and there was no evidence of hallucinations, delusions, thought broadcasting or withdrawal, or ideas of reference. Speech was unremarkable, and no psychomotor agitation or slowing was noted. Digit span was # [sic] digits forward and # [sic] digits backwards, and all three of three objects were recalled after delay. Simple calculations were intact, and the claimant was able to perform serial #'s [sic] and spell "world" backwards. The claimant was able to recall the name of the current president, and of # [sic] of the next most recent presidents. Similarity and differences testing was intact, as was interpretation of proverbs. Insight and judgment were intact too.

The claimant has not generally received the type of medical treatment one would expect for a totally disabled individual.

. . . .

While the claimant has had difficulty sleeping, there is no evidence of loss of weight due to loss of appetite due to pain or depression.

The claimant has alleged problems with concentration due to his mental problems. However, there is no objective evidence of cognitive defects due to pain or depression with intact memory and concentration.

. . . .

As for the opinion evidence, I have considered the opinion of Jeremy Flagel, M.D., in a mental functional assessment signed on March 28, 2009. In assessing the claimant's mental limits, he indicated that the claimant had between moderate to marked limitations in most major mental functional domains. He concluded that the degree of severity of the claimant's depression and anxiety precluded him from being able to follow multi-step instructions to tolerate stresses [sic]. To the extent that Dr. Flagel's opinion does not allow for the ability to do simple and repetitive tasks with no public contact and limited co-worker and supervisor interaction, I give it little weight. Dr. Flagel specifically cited the claimant attention and concentration difficulties as a basis for his assessment. However, his own progress notes do not

12

1  support the degree of impairment reflected in his
   assessment.  Mental status exam shows intact
2  concentration and memory.  It appears that the
   claimant's symptoms are being appropriately managed
3  with a combination of psychotropic medications and
   psychotherapy.  There are no reported adverse side
4  effects from the medications.  Finally, his assigned
   GAF of 50 is inconsistent with his assessment.
5
        8.  The claimant is unable to perform any past
6  relevant work.
7         . . . .
8         12.  Used as a framework for decision making,
   Medical-Vocational Guideline rule 203.09, 20 C.F.R.,
9  Part 404, Subpart P, Appendix 2, recommends a finding
   that a hypothetical individual of the claimant's age,
10 education, work experience, and residual functional
   capacity is not disabled although the erosion effect of
11 the claimant's nonexertional limitations on the
   occupational base presumed to exist by rule 203.09 is
12 significant; yet nevertheless, a significant number of
   jobs remain in the rule's occupational base.  Moreover,
13 the vocational expert was able to identify other jobs
   existing in significant numbers in the national or
14 regional economy that the claimant could perform.
15        . . . .
16 Examples of such jobs identified by the vocational
   expert included: floor waxer, DOT No. 381.687-034,
17 unskilled, SVP-2, medium exertional level, 1,600 jobs
   in regional economy.  And 1.5 million jobs in national
18 economy; sweeper cleaner, DOT No. 389.683-010,
   unskilled, SVP-2, medium exertional level, 1,520 jobs
19 in regional economy, and 1.6 million jobs in national
   economy; and bander, DOT No. 762.687-010, unskilled,
20 SVP-2, medium exertional level, 890 jobs in regional
   economy, and 111,000 in national economy.
21
         . . . .
22
        13.  The claimant has not been under a disability,
23 as defined in the Social Security Act, from May 1,
   2008, through the date of this decision.
24
25 (Id. at 11-17 (citations omitted) (emphasis in original).)
26     Based on all of the above, ALJ Muskrat concluded that
27 Guttilla was not entitled to a period of disability or disability
28 insurance benefits.  (Id. at 17.)

13

09cv2259 MMA (RBB)

## V.   STANDARD OF REVIEW

To qualify for disability benefits under the Social Security Act, an applicant must show two things:  (1) He or she suffers from a medically determinable impairment that can be expected to last for a continuous period of twelve months or more or result in death, and (2) the impairment renders the applicant incapable of performing the work that he or she previously performed or any other substantially gainful employment that exists in the national economy.  <u>See</u> 42 U.S.C.A. §§ 423(d)(1)(A), (2)(A) (West 2003).  An applicant must meet both requirements to be classified as "disabled."  <u>Id.</u>

Sections 205(g) and 1631(c)(3) of the Social Security Act allow applicants whose claims have been denied to seek judicial review of the Commissioner's final agency decision.  42 U.S.C.A. §§ 405(g), 1383(c)(3) (West 2003).  The Court should affirm the decision unless "it is based upon legal error or is not supported by substantial evidence." <u>Bayliss v. Barnhart</u>, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (citing <u>Tidwell v. Apfel</u>, 161 F.3d 599, 601 (9th Cir. 1999)).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support [the ALJ's] conclusion[,]" considering the record as a whole.  <u>Webb v. Barnhart</u>, 433 F.3d 683, 686 (9th Cir. 2005) (citing <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971)).  It means "'more than a mere scintilla but less than a preponderance[]'" of the evidence. <u>Bayliss</u>, 427 F.3d at 1214 n.1 (quoting <u>Tidwell</u>, 161 F.3d at 601).  "'[T]he court must consider the evidence that supports and the evidence that detracts from the ALJ's conclusion . . . .'" <u>Frost</u>

1  v. Barnhart, 314 F.3d 359, 366–67 (9th Cir. 2002) (quoting Jones

2  v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985) (citing Universal

3  Camera Corp. v. NLRB, 340 U.S. 474, 487–88 (1951).

4      To determine whether a claimant is "disabled," the Social

5  Security regulations use a five-step process outlined in 20

6  C.F.R. § 404.1520 (West 2009).  If an applicant is found to be

7  "disabled" or "not disabled" at any step, there is no need to

8  proceed further.  Ukolov v. Barnhart, 420 F.3d 1002, 1003 (9th

9  Cir. 2005) (quoting Schneider v. Comm'r of Soc. Sec. Admin., 223

10  F.3d 968, 974 (9th Cir. 2000)).  Although the ALJ must assist the

11  applicant in developing a record, the applicant bears the burden

12  of proof during the first four steps.  Tackett v. Apfel, 180 F.3d

13  1094, 1098 & n.3 (9th Cir. 1999).  If the fifth step is reached,

14  however, the burden shifts to the Commissioner.  Id. at 1098.

15  The steps for evaluating a claim are as follows:

16      **Step 1.**  Is the claimant presently working in a
    substantially gainful activity?  If so, then the
17      claimant is "not disabled" within the meaning of the
    Social Security Act and is not entitled to disability
18      insurance benefits.  If the claimant is not working in
    a substantially gainful activity, then the claimant's
19      case cannot be resolved at step one and the evaluation
    proceeds to step two.

20
        **Step 2.**  Is the claimant's impairment severe?  If
21      not, then the claimant is "not disabled" and is not
    entitled to disability insurance benefits.  If the
22      claimant's impairment is severe, then the claimant's
    case cannot be resolved at step two and the evaluation
23      proceeds to step three.

24      **Step 3.**  Does the impairment "meet or equal" one
    of a list of specific impairments described in the
25      regulations?  If so, the claimant is "disabled" and
    therefore entitled to disability insurance benefits.
26      If the claimant's impairment neither meets nor equals
    one of the impairments listed in the regulations, then
27      the claimant's case cannot be resolved at step three
    and the evaluation proceeds to step four.

28

   **Step 4.** Is the claimant able to do any work that he or she has done in the past?  If so, then the claimant is "<u>not</u> <u>disabled</u>" and is not entitled to disability insurance benefits.  If the claimant cannot do any work he or she did in the past, then the claimant's case cannot be resolved at step four and the evaluation proceeds to the fifth and final step.

   **Step 5.** Is the claimant able to do any other work?  If not, then the claimant is "<u>disabled</u>" and therefore entitled to disability insurance benefits.  If the claimant is able to do other work, then the Commissioner must establish that there are a significant number of jobs in the national economy that claimant can do.  There are two ways for the Commissioner to meet the burden of showing that there is other work in "significant numbers" in the national economy that claimant can do:  (1) by the testimony of a vocational expert, or (2) by reference to the Medical-Vocational Guidelines at 20 C.F.R. pt. 404, subpt. P, app. 2.  If the Commissioner meets this burden, the claimant is "<u>not</u> <u>disabled</u>" and therefore not entitled to disability insurance benefits.  If the Commissioner cannot meet this burden, then the claimant is "<u>disabled</u>" and therefore entitled to disability benefits.

<u>Id.</u> at 1098-99 (footnotes and citations omitted); <u>see also</u> <u>Bustamante v. Massanari</u>, 262 F.3d 949, 954 (9th Cir. 2001) (giving an abbreviated version of the five steps).

   Section 405(g) permits this Court to enter a judgment affirming, modifying, or reversing the Commissioner's decision. 42 U.S.C.A. § 405(g) (West 2003).  The matter may also be remanded to the Social Security Administration for further proceedings.  <u>Id.</u>

   "If the evidence can reasonably support either affirming or reversing the Secretary's conclusion, the court may not substitute its judgment for that of the Secretary." <u>Flaten v. Sec'y Health & Human Servs.</u>, 44 F.3d 1453, 1457 (9th Cir. 1995). Courts must uphold the denial of benefits if the evidence is susceptible to more than one rational interpretation, one of

1  which supports the ALJ's decision.   <u>Burch v. Barnhart</u>, 400 F.3d

2  676, 679 (9th Cir. 2005).

3                          **VI. DISCUSSION**

4  **A.   <u>Plaintiff's Argument</u>**

5       Guttilla contends that the ALJ erred by substituting his

6  opinion for that of Plaintiff's treating psychiatrist. (Mot.

7  Reverse Remand 11.)  Plaintiff argues that the ALJ rejected the

8  opinion of treating psychiatrist, Dr. Flagel, without giving

9  clear and convincing reasons for doing so.  (<u>Id.</u>)  Plaintiff

10 notes that Dr. Flagel gave Guttilla a GAF of fifty on Guttilla's

11 first visit, and Dr. Flagel's evaluation of Guttilla seventeen

12 months later showed moderate and marked limitations in all

13 vocational categories.  (<u>Id.</u> at 12.)  Based on this, Dr. Jesco, a

14 vocational expert, testified that a person limited to the degree

15 indicated by Dr. Flagel could not perform even simple, repetitive

16 work.  (<u>Id.</u>)

17      Guttilla notes that the ALJ accepted Dr. Flagel's diagnosis

18 of major depressive disorder and panic disorder, but rejected the

19 psychiatrist's opinion of Guttilla's mental functioning, even

20 though there is no medical evidence contradicting the doctor's

21 opinion.  (<u>Id.</u> at 12.)

22      Guttilla also claims that the ALJ did not specifically

23 address Dr. Flagel's opinion but merely discusses the objective

24 evidence.  (<u>Id.</u> at 13.)  Plaintiff argues that an uncontroverted

25 expert opinion cannot be rejected without providing clear and

26 convincing reasons for doing so.  (<u>Id.</u> at 12.)  Plaintiff cites

27 <u>Montijo v. Secretary</u>, 729 F.2d 599 (9th Cir. 1984), for the

28 proposition that neither personal observations made by the ALJ

                                17

1   nor the fact that physicians cannot support their opinions with
2   objective findings are "clear and convincing" reasons for
3   rejecting uncontroverted opinions.  (Mot. Reverse Remand 13
4   (citing <u>Montijo</u>, 729 F.2d at 601).)

5       Finally, Plaintiff argues that because the ALJ's conclusion
6   lacks evidentiary support, his rejection of the opinion of Dr.
7   Flagel and determination that Guttilla was not disabled is legal
8   error.  (<u>Id.</u>)

9   **B.   <u>Defendant's Argument</u>**

10      Defendant maintains that ALJ Muskrat was not required to
11  accept Dr. Flagel's opinion simply because it was uncontradicted,
12  noting that an ALJ may disregard a treating physician's opinion
13  whether or not it is contradicted.  (Cross-Mot. Summ. J. 2.)
14  Defendant cites <u>Batson v. Comm'r of Soc. Sec.</u>, 359 F.3d 1190 (9th
15  Cir. 2004), and <u>Magallanes v. Bowen</u>, 881 F.2d 747 (9th Cir.
16  1989), and argues that an uncontradicted, treating physician's
17  opinion may be disregarded as long as the ALJ's decision is based
18  on substantial evidence and clear and convincing reasoning.
19  (Cross-Mot. Summ. J. 4 (citing <u>Batson</u>, 359 F.3d at 1191-95;
20  <u>Magallanes</u>, 881 F.2d at 751).)  Defendant also contends that the
21  ALJ "provided numerous sufficient reasons for giving [Dr.
22  Flagel's opinion] reduced weight."  (<u>Id.</u>)

23      The Commissioner argues that the ALJ properly evaluated the
24  doctor's opinion and gave it little weight based on clear and
25  convincing reasons.  (<u>Id.</u> at 3.)  Defendant contends that the
26  first reason the ALJ provided was that Dr. Flagel's progress
27  notes did not support a finding of complete disability because
28  his exam showed intact concentration and memory.  Defendant cites

1  Tommasetti v. Astrue, 533 F.3d 1035 (9th Cir. 2008), which held

2  that an ALJ may reject a treating physician's opinion where that

3  opinion is inconsistent with medical records.  (Mot. Summ. J. 4-5

4  (citing Tommasetti, 533 F.3d at 1041).)

5      Second, Defendant asserts that the ALJ observed that Dr.

6  Flagel's examination of Guttilla showed very little mental

7  impairment.  (Id.)  Defendant argues that the doctor noted

8  Guttilla was "well-groomed, cooperative, calm, with fair eye

9  contact, clear speech, relevant spontaneous conversation, with a

10 depressed anxious mood but appropriate affect, with normal

11 perception, intact memory, intact concentration, average

12 intelligence, good insight, intact judgment, and good impulse

13 control."  (Id. at 5.)  The Commissioner asserts that Dr.

14 Flagel's opinion that Guttilla was mentally disabled was not

15 supported by these findings; therefore, the ALJ properly

16 concluded that the opinion was entitled to little weight.  (Id.)

17     Third, Defendant contends that the ALJ considered evidence

18 that Guttilla's symptoms were controlled with medication.  (Id.

19 (citing Warre v. Comm'r of Soc. Sec., 439 F.3d 1001, 1006 (9th

20 Cir. 2006).)  In Warre, the court held that "[i]mpairments that

21 can be controlled effectively with medication are not disabling

22 . . . ."  Warre, 439 F.3d at 1006.  Additionally, the

23 administrative law judge observed that Plaintiff had no side

24 effects from his medications.  (Cross-Mot. Summ. J. 5.)

25     Next, Judge Muskrat found that the GAF score assigned to

26 Guttilla by Dr. Flagel was inconsistent with his treatment

27 records.  (Id.)  Finally, Defendant notes that the ALJ considered

28 the opinion of reviewing physician, psychiatrist K.J. Loomis, who

1  found that disability benefits could not be conferred based on
2  the evidence in Guttilla's file.  (Id.)

3      Defendant adds that Dr. Flagel saw Guttilla infrequently and
4  only for medication management and follow-up visits.  (Id.)
5  Appointments were five to six weeks apart.  (Id. at 5-6 (citing
6  Johnson v. Shalala, 60 F.3d 1428, 1433, (9th Cir. 1995).)  In
7  Johnson, the court held that where a claimant only needs
8  conservative care, the ALJ properly rejected the treating
9  physician's opinion as unsubstantiated by medical documentation.
10 (Cross-Mot. Summ. J. 5-6.)

11      According to the Commissioner, because there were no truly
12 objective findings supporting Dr. Flagel's opinion, a strong
13 inference was created that the opinion was based on Guttilla's
14 subjective complaints.  (Id. at 6.)  Defendant argues that
15 Plaintiff does not challenge the finding that Guttilla's
16 subjective allegations were not credible; the Commissioner
17 concludes that the ALJ properly discounted Dr. Flagel's opinion
18 because it was based on Guttilla's statements.  (Id.)

19      Lastly, Defendant reiterates that Mary Jesco, the vocational
20 expert, testified that a person of Guttilla's age, education, and
21 work experience, could perform work in the national economy, and
22 this supported the conclusion that Plaintiff was not disabled.
23 (Id.)

24      Defendant asserts that all the above constitute substantial
25 evidence and clear and convincing reasons for the ALJ to give Dr.
26 Flagel's opinion reduced weight.  (Id. at 7.)

27 **C.**   **Treating Psychiatrist**

28

1    The opinions of physicians in Social Security disability

2  cases fall into three categories.  Holohan v. Massanari, 246 F.3d

3  1195, 1201 (9th Cir. 2001) (citing Lester v. Chater, 81 F.3d 821,

4  830 (9th Cir. 1995); see also 20 C.F.R. § 404.1527(d).  These are

5  "(1) those who treat the claimant (treating physicians); (2)

6  those who examine but do not treat the claimant (examining

7  physicians); and (3) those who neither examine nor treat the

8  claimant [but who review the claimant's file] (nonexamining [or

9  reviewing] physicians)."  Holohan, 246 F.3d at 1201-02

10  (alterations in original).

11    Dr. Flagel's status as a treating physician is not

12  contested.  A treating physician's opinion generally carries more

13  weight than other opinion evidence.  Id. at 1202.  "[I]f a

14  treating physician's medical opinion is supported by medically

15  acceptable diagnostic techniques and is not inconsistent with

16  other substantial evidence in the record, the treating

17  physician's opinion is given controlling weight."  Id. (citing 20

18  C.F.R. § 404.1527(d)(2)); see also Social Security Ruling (SSR)

19  96-2p, 1996 SSR LEXIS 9 (July 2, 1996).[3]  "An ALJ may reject the

20  uncontradicted medical opinion of a treating physician only for

21  'clear and convincing' reasons supported by substantial evidence

22  in the record."  Id. (citing Reddick v. Chater, 157 F.3d 715, 725

23  (9th Cir. 1998)).  "Similarly, an ALJ may reject a treating

24  physician's uncontradicted opinion on the ultimate issue of

25

26    [3]  Social Security Rulings clarify the Social Security Act's
   implementing regulations and the Social Security Agency's
27  policies; they are binding on the agency but do not have the
   force of law.  The rulings are given some deference as long as
28  they are consistent with statutes and regulations.  Holohan, 246
   F.3d at 1202 n.1 (citing Bunnell v. Sullivan, 947 F.2d 341, 346
   n.3 (9th Cir. 1991) (en banc)).

21

disability only with 'clear and convincing' reasons supported by substantial evidence in the record." Id. at 1202-03 (citing Reddick, 157 F.3d at 725). Even if the treating physician's opinion is contradicted by other evidence, it is still entitled to deference. Id.

ALJ Muskrat's decision to give Dr. Flagel's opinion little weight is reversible legal error if the stated reasons for the decision are not clear and convincing and supported by substantial evidence. See Lester, 81 F.3d at 830-31. "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support [the ALJ's] conclusion[,]" considering the record as a whole. Webb v. Barnhart, 433 F.3d 683, 686 (9th Cir. 2005) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971)). It is "'more than a mere scintilla but less than a preponderance.'" Bayliss v. Barnhart, 427 F.3d at 1214 n.1 (quoting Tidwell v. Apfel, 161 F.3d at 601). "The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." Reddick, 157 F.3d at 725 (citing Embrey v. Bowen, 849 F.2d 418, 421-22 (9th Cir. 1988)).

As an initial observation, the ALJ cites "mental status exams" as part of his analysis of Plaintiff's credibility and explains that they reveal Guttilla "was alert and oriented" with "no evidence of hallucinations, thought broadcasting or withdrawal, or ideas of reference." (Admin. R. Attach. #2, 14.) The ALJ cites these exams as showing the following:

> Digit span was # [sic] digits forward and # [sic] digits backwards . . . . [C]laimant was able to perform serial #'s [sic] and spell "world" backwards. The [C]laimant was also able to recall the name of the

22

1   current president, and of # [sic] of the next most
2   recent presidents.  Similarity and differences testing
    was intact, as was interpretation of proverbs.

3   (Id.)

4        The record contains no mental status exam noting any of these
5   facts.  It appears that the ALJ utilized form language where "#"
6   is used as a placeholder, and mental exam results would be
7   obtained and added to replace the missing information, denoted by
8   "#."  The ALJ incompletely described facts that are not in the
9   record to support his assertion that "the weight of the objective
10  evidence does not support the <u>claims of the claimant's disabling</u>
11  <u>limitations to the degree alleged</u>."  (Id. (citation omitted)
12  (emphasis added).)  Judge Muskrat's flawed method of evaluating
13  Plaintiff's credibility does not impact the Court's conclusion.
14  Instead, this Court's recommendation considers whether the
15  administrative law judge's opinion was based on substantial
16  evidence and gave clear and convincing reasons for discrediting
17  Dr. Flagel's opinion.

18  **D.   <u>Whether the ALJ's Reasons Were Clear and Convincing</u>**

19       The primary reason the ALJ gave for discrediting Dr. Flagel's
20  opinion was that the conclusions in the doctor's March 28, 2009
21  mental functional assessment were not supported by Guttilla's
22  treatment records.  (Id. Attach. #2, 15.)  Judge Muskrat held, "To
23  the extent that Dr. Flagel's opinion does not allow for the
24  ability to do simple and repetitive tasks with no public contact
25  and limited co-worker and supervisor interaction, I give it little
26  weight."  (Id. Attach. #2, 15.)  The Judge explained, "Dr. Flagel
27  specifically cited the claimant['s] attention and concentration
28  difficulties as a basis for his assessment.  However, his own

23

progress notes do not support the degree of impairment reflected
in his assessment (Exhibit 18F [Dr. Flagel's medical records from
October 18, 2007, through March 28, 2009])." (Id.)  Next, ALJ
Muskrat stated, "Mental status exam shows intact concentration and
memory.  It appears that the claimant's symptoms are being
appropriately managed with a combination of psychotropic
medications and psychotherapy.  There are no reported adverse side
effects from the medications.  Finally, his assigned GAF of 50 is
inconsistent with his assessment." (Id. (citation omitted).)

    The law does not "require the ALJ to evaluate in writing
every piece of testimony and evidence submitted." Zalewski v.
Heckler, 760 F.2d 160, 166 (7th Cir. 1985).  Rather, the court
should only require a "minimal level of articulation by the ALJ as
to his assessment of the evidence . . . ." Id.  For the reasons
discussed below, the administrative law judge's opinion does not
meet these minimal standards.

    1.   **Mental Status Evaluation**

    Although the ALJ cites the October 18, 2007 mental status
evaluation, it is not clear that this exam contradicts the mental
residual functional assessment.  The evaluation by Dr. Flagel took
place nearly seven months before Guttilla stopped working; at that
time, the doctor indicated that Plaintiff's thought process,
concentration, and memory were intact. (Admin. R. Attach. #7,
343.)  This evidence is not determinative for two main reasons:
(1) the evaluation occurred before Plaintiff claims to be
disabled, May 1, 2008, and (2) there are mixed findings in Dr.
Flagel's progress notes.  This exam took place on Guttilla's first
visit to Dr. Flagel. (Id. at 343-45.)  On that date, Dr. Flagel

noted, under the heading "current symptoms," that Guttilla reported that he "[c]an't concentrate." (Id. at 340.)  The doctor diagnosed Plaintiff with "MDD (major depressive disorder), single (episode), [and] severe." (Id. at 344.)  He also gave Plaintiff a GAF score of fifty. (Id. at 344.)  Thus, the mental status evaluation contains facts that support and contradict Judge Muskrat's decision.

The Court cannot rewrite the administrative law judge's opinion.  It is well established that the district court may not resolve a social security case de novo and reach its own conclusions from the evidence.  Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984); see also McKay v. Gardner, 245 F. Supp. 739, 742 (W.D. Pa. 1965).  The Court limits its inquiry to the reasons the ALJ stated in his decision.  Judge Muskrat's references to the mental status exam performed before Guttilla claimed to be disabled are not substantial evidence or clear and convincing reasons for giving Dr. Flagel's opinion little weight.

### 2.   The Management of Claimant's Symptoms

The second reason the ALJ gave for giving the treating physician's opinion little weight was that Plaintiff's "symptoms are being appropriately managed with a combination of psychotropic medications and psychotherapy." (Admin. R. Attach. #2, 15.) Again, the ALJ does not point to any specific medication or therapy that he considered effective.  Although Guttilla was prescribed antidepressant and antianxiety medications, there is no substantial evidence that these courses of treatment were effective in controlling his symptoms. (Id. Attach. #7, 332–44.)

1    At their first meeting on October 18, 2007, Dr. Flagel
2  explicitly noted treatment goals of reducing Plaintiff's anxiety
3  and depression.  (Id. at 344.)  Over the course of Guttilla's
4  treatment, he continuously experienced depression and anxiety.
5  (Id. at 332–44.)  On January 10, 2008, Dr. Flagel changed
6  Guttilla's antidepressant medication to Zoloft.  (Id. at 338.)  He
7  increased the dosage of the antidepressant medication on November
8  26, 2008, approximately six months after the disability onset
9  date, but Guttilla continued to be depressed.  (Id. at 336–37.)
10 Dr. Flagel again increased the Zoloft dosage on January 5, 2009.
11 (Id. at 336.)  The increasing dosages undermine the ALJ's
12 statement.

13    Plaintiff's anxiety was also sustained over the course of his
14 treatment with Dr. Flagel; Guttilla perceived some lessening of
15 anxiety on November 26, 2008, but the anxiety was present both
16 before and after that visit.  (Id. at 332, 336–38, 344.)  In
17 Holohan v. Massanari, 246 F.3d at 1205, the court held that the
18 treating physician's "statements must be read in context of the
19 overall diagnostic picture he draws."  Id. (explaining that some
20 improvement from anxiety or depression does not mean that the
21 person's impairments no longer seriously affect his ability to
22 function in a workplace).  There is no substantial evidence that
23 Plaintiff's symptoms were being appropriately managed by his
24 medication.

25    Additionally, there are no records that Plaintiff attended
26 psychotherapy sessions.  During his first session with Guttilla,
27 Dr. Flagel noted that behavioral activation was a treatment goal.
28 (Admin. R. Attach. #7, 344.)  He referred Plaintiff to Dr.

09cv2259 MMA (RBB)

McGinnis for individual therapy.  (<u>Id.</u> at 345.)   There are no
medical records from Dr. McGinnis, and Dr. Flagel did not provide
individual therapy.   Consequently, there is no evidence that
Plaintiff actually underwent this therapy.   Each of the six
subsequent visits to Dr. Flagel was a "medication visit" that
lasted fifteen to twenty minutes.  (<u>Id.</u> at 334-38.)   Judge
Muskrat's cursory statement that the Plaintiff's therapy was
effective is not supported by any evidence, substantial or
otherwise.

     The ALJ's conclusion that Guttilla's symptoms were adequately
controlled by medication and therapy are not supported by evidence
that "a reasonable mind might accept as adequate to support the
conclusion" and, therefore, are not supported by substantial
evidence.   <u>See</u> <u>Webb</u> 433 F.3d at 686 (citing <u>Richardson</u>, 402 U.S.
at 401).   Likewise, the ALJ's analysis and explanation is
insufficient.  (<u>See</u> Admin. R. Attach. #2 at 15.)   "The ALJ must do
more than offer his conclusions.   He must set forth his own
interpretations and explain why they, rather than the
doctor[']s[], are correct."   <u>Reddick</u>, 157 F.3d at 725 (citing
<u>Embrey</u>, 849 F.2d at 421-22).   Because the ALJ's determination that
Guttilla's symptoms were controlled was not supported by
substantial evidence, it is not a clear and convincing reason to
discount Dr. Flagel's opinion.

     **3.   Adverse Side Effects**

     The third reason Judge Muskrat gave for giving the doctor's
opinion little weight was that "[t]here are no reported adverse
side effects from the medications."  (Admin. R. Attach. #2, 15.)
This statement, however, is incorrect.   The evidence in the record

27

shows that Guttilla had at least one adverse side effect from a
medication.   On January 10, 2008, Dr. Flagel noted, in the
"progress" section of his notes, that "Ativan caused slurring."
(Id. Attach. #7, 338.)   The prescription for Ativan, an anti-
anxiety medication, was discontinued.   (Id.)   Additionally, the
Court has already noted that the ALJ's statement that Plaintiff's
symptoms were being appropriately managed with a combination of
psychotropic medication and psychotherapy is not supported by the
record and is not clear and convincing.   Thus, the conclusion that
Guttilla suffered no side effects is incorrect and is not a clear
and convincing reason to give Dr. Flagel's opinion little weight.
See Reddick, 157 F.3d at 725 (citing Embrey, 849 F.2d at 421-22).

### 4.   Guttilla's Global Assessment of Functioning Score

The final reason given by ALJ Muskrat for discrediting Dr.
Flagel's opinion was that he assigned Guttilla a global assessment
of functioning score of fifty which was inconsistent with the
psychiatrist's assessment.   (Admin. R. Attach. #2, 15); id.
Attach. #7, 344.)   "A GAF between 41 and 50 indicates serious
symptoms (e.g. suicidal ideation, severe obsessional rituals,
frequent shoplifting) or any serious impairment in social,
occupational, or school functioning (e.g., no friends, unable to
keep a job)." Morgan v. Comm'r Soc. Sec. Admin., 169 F.3d 595,
598 n.1 (9th Cir. 1999).   But the GAF score alone does not
establish disability.   See e.g., Howard v. Comm'r Soc. Sec., 276
F.3d 235, 241 (6th Cir. 2002).

Dr. Flagel assigned a GAF score to Plaintiff on October 18,
2007, during the initial consultation seven months before
Guttilla's claim of disability.   (Admin. R. Attach. #7, 340, 344.)

1    On the same date, the psychiatrist completed a mental status
2    evaluation form and checked boxes indicating that Guttilla's
3    cognitive function was normal, except for depression and anxiety.
4    (Id. at 343.)  Also on that date, the doctor's handwritten notes
5    indicate that Guttilla had trouble concentrating, experienced
6    panic attacks, had little ambition, wanted to be left alone,
7    suffered from anxiety, and had trouble sleeping.  (Id. at 340.)
8    Where the check-box form conflicts with the handwritten notes, the
9    ALJ must give specific and legitimate reasons for crediting one
10   assessment over the other.  See e.g., Korenica v. Astrue, 346 Fed.
11   App'x 141, 142 (9th Cir. 2009) ("The ALJ reasonably determined
12   that the statements in the two documents [narrative versus check-
13   the-box statement] were contradictory, and determined that Dr.
14   Geary's narrative report was more consistent with his clinical
15   findings and the findings of other medical sources.")

16        Other than stating that the GAF score of fifty is
17   inconsistent with Dr. Flagel's assessment, the ALJ does not give
18   any specific reason for that conclusion.  (Admin. R. Attach. #2,
19   15.)  He has not explained how the doctor's assessment conflicts
20   with the GAF score.  As noted previously, the court's function is
21   not to create a new rationale to support the administrative law
22   judge's decision.  See Garner, 745 F.2d at 387.  Because the GAF
23   score is consistent with some of the doctor's assessment notes,
24   and the ALJ does not identify substantial evidence in the record
25   to discredit it, the determination that a GAF score of fifty was
26   inconsistent with Dr. Flagel's assessment is not a clear and
27   convincing reason for giving his opinion little weight.  See
28   Reddick, 157 F.3d at 725 (citing Embrey, 849 F.2d at 421-22).

**E.   Additional Arguments**

In the Motion for Summary Judgment, Defendant argues, "It also bears mention that Dr. Flagel provided Plaintiff with conservative medical care, seeing him only for medication management and scheduling follow-up appointments for 5 to 6 weeks in the future." (Cross-Mot. Summ. J. 5 (citation omitted).) Defendant states, "Moreover, in light of the absence of objective evidence (such as test results) supporting Dr. Flagel's opinion, it is logical to infer that his opinion is based to a large extent on Plaintiff's subjective statements." (Id. at 6 (citation omitted).)  Defendant concludes that "the ALJ properly gave less weight to an opinion based to a large extent on those statements." (Id. (citation omitted).)

Although Defendant's arguments may be persuasive, and could have been asserted by Judge Muskrat to support his decision, they were not.  As a result, the Court cannot rely on these additional reasons, not included in the ALJ's decision, to find clear and convincing reasons to discredit Dr. Flagel's opinion.  Garner, 745 F.2d at 387.

Defendant also asserts that "the ALJ noted the reviewing physicians' opinions, which include psychiatrist K. J. Loomis' January 2009 opinion that benefits could not be granted based on the evidence in Plaintiff's file." (Cross-Mot. Summ. J. 5 (citation omitted).)  "[T]he findings of a nontreating, nonexamining physician can amount to substantial evidence, so long as other evidence in the record supports those findings." Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1996) (citations omitted). But Dr. Loomis's statement is a review of Dr. Mauro's conclusion.

1  Dr. Mauro wrote, "Based on overall evidence in [the] file[, it]
2  appears we cannot give this claim fully favorable decision from
3  AOD of 3/5/07." (Admin. R. Attach. #7, 317.) Dr. Loomis
4  concurred, "Agree with above. Can not provide fully favorable
5  decision." (Id.) There is no evidence in the record regarding
6  Guttilla's mental condition other than Dr. Flagel's opinion.
7  Thus, the state agency consultants' statements are not substantial
8  evidence.

9      When looking only at the reasons given in ALJ Muskrat's
10 decision, the Court should find that the ALJ did not give
11 specific, legitimate reasons for disregarding Dr. Flagel's
12 opinions. See Batson v. Comm'r Soc. Sec. Admin., 359 F.3d at
13 1195. "[I]f the ALJ rejects significant probative evidence, he
14 must explain why." Lusardi v. Astrue, 350 Fed. App'x 169, 173
15 (9th Cir. 2009). If the AlJ's decision is not supported by
16 substantial evidence, remand or reversal is appropriate. See
17 generally Gallant v. Heckler, 753 F.2d 1450, 1457 (9th Cir. 1984)
18 (reversing the judgment and concluding that a remand was not
19 necessary).

20     Plaintiff claims that the ALJ did not specifically address
21 Dr. Flagel's opinion. (Mot. Reverse Remand 15.) That is not the
22 case. As discussed above, Judge Muskrat dismissed Dr. Flagel's
23 opinion; however, he failed to provide clear and convincing
24 reasons to afford the opinion little weight.

25

26

27

28

## VII.   CONCLUSION

"[T]he decision of the Commissioner must be upheld if it is supported by substantial evidence and if the Commissioner applied the correct legal standards."   Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1011 (9th Cir. 2003) (citing Pagter v. Massanari, 250 F.3d 1255, 1258 (9th Cir. 2001)).   If the ALJ's decision is not supported by substantial evidence, remand or reversal is appropriate.   See generally Gallant v. Heckler, 753 F.2d at 1457 (reversing the judgment and concluding that remand was not required).

For the reasons set forth above, Plaintiff's Motion for Reversal and/or Remand should be **GRANTED**; Defendant's Motion for Summary Judgment should be **DENIED**; and the matter should be **REMANDED** for an award of benefits.   See Edler v. Astrue, 2010 U.S. App. LEXIS 16284, at *7 (9th Cir. Aug. 3, 2010).

This Report and Recommendation will be submitted to the United States District Court judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).   Any party may file written objections with the Court and serve a copy on all parties on or before September 3, 2010.   The document should be captioned "Objections to Report and Recommendation."   Any reply to the objections shall be served and filed on or before September 17, 2010.   The parties are advised that failure to file objections within the specified time may waive the right to appeal the

09cv2259 MMA (RBB)

1   district court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir.

2   1991).

3

4   DATED: August 13, 2010                    _____
                                              Ruben B. Brooks
5                                             United States Magistrate Judge

6   cc:  Judge Anello
         All parties of record
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28